UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

BEVERLY OWEN BARBER,
    Plaintiff,

v().

CHARLES ROBINSON, JR., et al.,
    Defendants.

Case No. 1:25-cv-652-CLM

## MEMORANDUM OPINION

    Attorney Beverly Barber sued Danny Mitchell in state court, claiming that Mitchell owed her $150,000 in unpaid attorney's fees. She then secured a lis pendens on Mitchell's campground, claiming that it was subject to her claim against Mitchell. After a bench trial, the trial court ruled that Barber owed Mitchell $1.17 million for slandering the campground's title with the lis pendens. A jury then rejected Barber's claim for unpaid attorney's fees and instead awarded Mitchell $750,000 for Barber's abuse of the legal process. So the court entered a $1.92 million judgment for Mitchell. The Alabama Supreme Court affirmed the judgment, and in a separate order, sanctioned Barber $50,000 and enjoined her from proceeding pro se in any future state court lawsuits or appeals related to the Mitchell case, finding that Barber had "made repetitious and frivolous filings in [the state's] trial and appellate courts."

    Barber brings this case as an "independent action under Federal Rule of Civil Procedure 60(d)(1) and 42 U.S.C. § 1983" against Mitchell, his attorney, Charles Robinson, Jr., and Robinson's law firm, the Robinson Law Firm, P.C. (Doc. 4).[1] For the reasons stated within, the court **DENIES** Barber's motion for recusal (doc. 27) and motion to stay (doc. 31). The court **GRANTS** Defendants' motions to dismiss (docs. 6, 8). All other motions and requests for relief are **DENIED** (docs. 10, 13, 18, 23, 26).

---

[1] In Count 3, Barber says that she is suing unknown state court officials as "John Does 1-10" for allegedly altering the state court record. Because "fictitious-party pleading is not permitted in federal court," Barber's claims against these officials are subject to dismissal. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010).

## BACKGROUND

This court has detailed the procedural history of Barber's state court litigation against Mitchell in its opinion dismissing Case No. 4:23-cv-1621, which Robinson and the Robinson Law Firm have attached to their motion to dismiss. (*See* Doc. 6-1). So the court needn't repeat the entire state court litigation history between the parties here.

On April 18, 2025, the Alabama Supreme Court issued a certificate of judgment affirming the nearly $2 million state court judgment for Mitchell and granting Mitchell's motion to sanction Barber for vexatious state court filings. *See Barber v. Mitchell*, St. Clair Cnty. Case No. 75-cv-2021-900150 (doc. 1290). Ten days later, Barber filed this lawsuit, asserting that she had fully exhausted all her state court appeals and that "[n]o further state remedies remain available." (*See* Doc. 1).

Barber's second amended complaint (doc. 4) pleads eight counts against Mitchell, Robinson, and the Robinson Law Firm. Count 1 asserts that Mitchell and Robinson obtained the state court judgment by "committing fraud upon the court" when they allegedly (a) fabricated claims about the effect of Barber's lis pendens on Mitchell's property; (b) suppressed Barber's ability to call witnesses at trial; (c) fabricated Mitchell's abuse of process claim; (d) issued illegal subpoenas and manipulated the evidence; and (e) forced Barber, who was severely ill, to go to trial against medical advice. (Doc. 4, pp. 17–20). Count 2 brings a claim for constitutional due process violations. (*Id.*, pp. 20–23). According to Barber, her Fourteenth Amendment due process rights were violated during the state court proceedings when (a) two of Barber's witnesses were prevented from testifying; (b) the trial judge was biased against her; (c) she was forced to proceed with trial while ill; (d) her writing implements were confiscated to prevent note-taking; and (e) she wasn't allowed to have the witnesses' testimony read back to her. (*See id.*). Barber also says that Mitchell and Robinson conspired to conceal exculpatory information from her that would have defeated the slander of title claim. (*Id.*, pp. 22–23).

In Count 3, Barber contends that Mitchell, Robinson, and other employees of the Robinson Law Firm conspired with unknown state court employees to alter the state court electronic filing system, manipulate the court

reporter's transcript, remove evidence from the courtroom, conceal a witness's contact information, and direct a witness to a fraudulent virtual testimony platform to prevent the witness' testimony. (*See id.*, pp. 23–28). Count 4 seeks an injunction halting execution of the state court judgment. (*Id.*, p. 28). Counts 5 and 6 claim that Mitchell and Robinson obtained the $50,000 sanction from the Alabama Supreme Court through fraud, misrepresentation, and corruption of the judicial process. (*See id.*, pp. 29–30).

Count 7 alleges that Mitchell and Robinson violated Barber's Fifth and Fourteenth Amendment Due Process rights by procuring rulings through fraud, misrepresentation, and corruption. (*Id.*, pp. 30–31). For example, Barber says that the Alabama Supreme Court's filing restriction is an unconstitutional restriction on access to the courts that resulted from Robinson filing false claims and claiming he was entitled to reimbursement for cases that he had no involvement in. (*Id.*, p. 31). Barber also says that by withholding a witness's contact information Robinson violated Barber's right to a fair hearing. (*See id.*). Finally, Count 8 asserts that Mitchell and Robinson owe Barber restitution because Mitchell sold his property in April 2025 even though the judgment for Mitchell on his lien-related counterclaim "was premised on Mitchell suffering a permanent loss of a property sale." (*Id.*, pp. 31–32).

Defendants moved to dismiss Barber's amended complaint. (Docs. 6, 8). While Defendants' motions were pending, the state court judge, the Honorable Javan Patton Crayton, held Barber in contempt for failing to pay the Alabama Supreme Court's $50,000 sanction or attend a hearing on Barber's failure to comply with the sanctions order. *See Barber v. Mitchell*, St. Clair Cnty. Case No. 75-cv-2021-900150 (doc. 1395). As part of the contempt order, Judge Crayton issued a writ of arrest that ordered the St. Clair County Sheriff to arrest Barber (*See id.*). Barber, who has brought at least 10 federal lawsuits related to her state court case with Mitchell, filed emergency motions in several of her federal court cases, asking the court to halt the state court contempt proceedings and vacate the writ of arrest.[2] The court has denied Barber's requested injunctive relief in this case and several others. (*See, e.g.*, Doc. 25). Based on these rulings, Barber seeks my recusal. (*See* Doc. 27).

---

[2] The court understands that, as of today, the Sheriff has yet to execute the writ of arrest.

## DISCUSSION

The court divides its discussion into three parts. First, the court will address Barber's motion for recusal (doc. 27). Next, the court will address Defendants' motions to dismiss (docs. 6, 8) and Barber's motion to stay (doc. 31). Finally, the court will address the parties' other motions for relief (docs. 10, 13, 18, 23, 26).

### I.  Motion for Recusal (Doc. 27)

Barber seeks my recusal under 28 U.S.C. § 144, which says, "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

"To warrant recusal under § 144, the moving party must allege facts that would convince a reasonable person that bias actually exists." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000). "The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources." *Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983). "An exception to that rule is made when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Id.* But "[n]either a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias." *See id.* "Thus, as a general rule, a judge's rulings in the same case are not valid grounds for recusal." *Loranger v. Stierheim*, 10 F.3d 776, 780 (11th Cir. 1994); *see also United States v. Liteky*, 973 F.2d 910 (11th Cir. 1992) ("[M]atters arising out of the course of judicial proceedings are not a proper basis for recusal.").

Having reviewed Barber's motion and supporting affidavit, the court finds that none of Barber's grounds for recusal "stem from an extra-judicial source" and are instead the types of complaints about adverse rulings that don't necessitate recusal. *See Loranger*, 10 F.3d at 780–81. For example, Barber complains that I denied one of her requests for emergency relief on *Younger* abstention grounds without discussing whether an exception to

4

abstention applies. (*See* Doc. 27, pp. 8–12). Barber also says that I personally attacked her character in denying her request for a TRO in this case by saying that she had a "habit of filing late." (*See id.*, pp. 14–23). Barber mischaracterizes my ruling. I didn't say that Barber had a habit of filing motions at the last minute. Quite the contrary; Barber's standard practice is to respond overnight. That's why I found that Barber's motion seeking to halt the state court proceedings was ***the one motion*** she delayed filing: "But Barber—who often files motions or responses the next day in her multiple federal cases—waited until the morning before the September 23rd hearing to ask this court to hold its own in-person hearing to block Judge Patton's hearing." (Doc. 25, p. 1). And "a party's failure to act with speed or urgency in moving for [a TRO] necessarily undermines a finding of irreparable harm." *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016).

Barber fails to provide a factual basis to support many of her other allegations. For example, Barber says that she objected to my ruling that she delayed moving for a TRO and that I then entered an order saying that she wasn't prejudiced by my comment. (*See* Doc. 27, pp. 17–23). But Barber's motion doesn't cite the order she is referring to, and although I have reviewed all of Barber's cases that I've presided over, I have been unable to locate this alleged order. Barber also alleges that Judge Crayton and I are "personal friends whose relationship affects [our] judicial conduct." (*Id.*, p. 26). But Barber admits that she has no evidence to support this allegation other than the fact that I've issued rulings in favor of Judge Crayton. (*See id.*, pp. 26–27). And contrary to Barber's assertion, I've never met or spoken to Judge Crayton, and my knowledge of Judge Crayton is limited to what I've learned from presiding over Barber's cases. *See Jaffe v. Grant*, 793 F.2d 1182, 1189 n.4 (11th Cir. 1986) ("Factual knowledge gained during earlier participation in judicial proceedings involving the same party is not sufficient to require a judge's recusal.").

To sum up, none of my rulings against Barber establish that I have "pervasive bias and prejudice" against her. *See Hamm*, 708 F.2d at 651. Nor is there an extrajudicial reason for my recusal. I have ruled against Barber because that's what the law required. As a result, the court **DENIES** Barber's motion for recusal because neither the motion nor its affidavit would "convince a reasonable person that bias actually exists." *See Christo*, 223 F.3d at 1333.

## II. Motions to Dismiss & Stay (Docs. 6, 8, 31)

As explained, Barber says that she is bringing the claims in her second amended complaint under Federal Rule of Civil Procedure 60(d) and 42 U.S.C. § 1983. Counts 2, 3, and 7 are the only claims in which Barber asserts that Defendants have violated her rights under either the U.S. Constitution or § 1983. So the court finds that Barber is bringing Counts 1, 4, 5, 6 and 8 under Rule 60(d). In evaluating Defendants' motions to dismiss, the court will discuss Barber's claims under Rule 60(d) before addressing the claims Barber brings under § 1983. The court will then address Barber's motion to stay.

### A. Rule 60(d)

Federal Rule of Civil Procedure 60(a) allows a court to fix clerical mistakes in its judgments or orders. *See* Fed. R. Civ. P. 60(a). And if certain requirements are met, Rule 60(b) allows the court to relieve a party of its obligations under a final judgment, order, or proceeding. *See* Fed. R. Civ. P. 60(b). Rule 60(d)(1) says that the other provisions of Rule 60 do "not limit a court's power to . . . entertain an independent action to relieve a party from a judgment, order, or proceeding." *See* Fed. R. Civ. P. 60(d)(1). Thus, Rule 60(d)(1) "is not an affirmative grant of power but merely allows continuation of whatever power the court would have had to entertain an independent action if the rule had not been adopted." *See* 11 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2868 (Sept. 2025 Update).

Defendants assert that the court should dismiss the claims that Barber brings under Rule 60(d)(1) because the court lacks jurisdiction to entertain Barber's claims seeking to vacate the state court judgment based on alleged fraud. The court agrees for two reasons. First, Barber's recently filed motion to stay concedes that this court lacks jurisdiction over an independent action to vacate a state court judgment:

> In their Reply Brief, Defendants correctly argue that "Rule 60 may not be used to attack a judgment from another court" and that federal courts lack jurisdiction over independent actions to vacate state court judgments. (Defs.' Reply Br. at 9–17). **Plaintiff agrees**. That is precisely why Plaintiff filed an independent action

> in State Court Case No.]cv2025-900316 the proper forum under Defendants' cited authority.
>
> . . .
>
> Defendants' primary argument is that "Rule 60 may not be used to attack a judgment from another court." (Defs. Reply Br. at 9–17). **Plaintiff agrees entirely**.
>
> That is precisely why Plaintiff filed an **independent action in state court** CV2025-900316 (venue to change) to vacate the state court judgment – the proper forum under Defendants' own cited authority.

(Doc. 31, p. 2, 3–4 (emphasis in original)).

As plaintiff, it's Barber's burden to show that this court has jurisdiction over the claims she brings under Rule 60(d). *See* WRIGHT & MILLER § 2868 (If an independent action "is brought in a court other than the one that gave the original judgment, independent grounds of jurisdiction are needed."). Rather than meet this burden, Barber agrees with Defendants that the court lacks jurisdiction. So the court finds that Counts 1, 4, 5, 6 and 8 of Barber's second amended complaint are subject to dismissal for lack of jurisdiction.

These counts are also subject to dismissal because Rule 60(d) cannot be used to sidestep the *Rooker-Feldman* doctrine. *See Ferrier v. Cascade Falls Condo. Ass'n, Inc.*, 820 F. App'x 911, 914 (11th Cir. 2020) (noting that "such an exception would effectively gut the doctrine"). Under that doctrine, this court lacks jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lozman v. City of Riveria Beach*, 713 F.3d 1066, 1072 (11th Cir. 2013).

Barber is a "state-court loser" because she had a $1.92 million judgment, $50,000 monetary sanction, and filing injunction entered against her. And Barber filed this lawsuit ten days after the Alabama Supreme Court issued its certificate of judgment, asserting that "[n]o further state remedies remain available." (*See* Doc. 1, p. 5). Plus, each of the claims that Barber brings under

7

Rule 60(d) would require the court to "review and reject" the state-court judgment. *See Lozman*, 713 F.3d at 1072. Count 1 seeks relief from the $1.92 million state court judgment because Barber contends that the judgment was obtained through fraud. *See Efron v. Candelario*, 110 F.4th 1229, 1237 (11th Cir. 2024) (*Rooker-Feldman* barred claim that court's determination was "the result of corruption"). Count 4 seeks an injunction halting enforcement of the state court judgment and $50,000 monetary penalty. And Counts 5 and 6, which assert that Robinson procured the Alabama Supreme Court sanctions order through fraud and misrepresentations, "boils down to a claim that the state court judgment caused [Barber's] injury" and thus "would succeed only to the extent that the state court wrongly decided the issues." *See Alvarez v. Att'y. Gen. for Fla.*, 679 F.3d 1257, 1263–64 (11th Cir. 2012) (quotations omitted). Finally, Count 8 asserts that Mitchell and Robinson owe Barber consideration for the $1.17 million lien-related judgment because the judgment's premise that Mitchell suffered a permanent property loss was false. *See Efron*, 110 F.4th at 1237–38 (finding that *Rooker-Feldman* barred unjust enrichment claim because it sought a finding that the Appellees weren't entitled "to the money they were paid").

Based on (a) Barber's admission that the court lacks jurisdiction over the claims she brings under Rule 60(d) and (b) the *Rooker-Feldman* doctrine, the court finds that it lacks subject matter jurisdiction over Counts 1, 4, 5, 6, and 8 of Barber's second amended complaint.[3] The court will therefore dismiss these counts without prejudice for lack of jurisdiction.

**B.    Section 1983**

The leaves the three counts that Barber brings under § 1983. Defendants say that the court should dismiss these claims for both jurisdictional and merits-based reasons. The court must decide first whether it has jurisdiction over Barber's § 1983 claims before considering their merit.

---

[3] In several of her filings Barber has contended that the *Rooker-Feldman* doctrine doesn't apply to her claims because she contends Robinson and Mitchell procured the state court judgment through fraud. But the Eleventh Circuit has consistently rejected requests to recognize a fraud exception to *Rooker-Feldman. See, e.g., Efron*, 110 F.4th at 1232 n.2.

**1. *Jurisdiction***: Defendants' main jurisdictional argument is that Barber's § 1983 claims are also subject to dismissal under *Rooker-Feldman*. Courts "should follow a claim-by-claim approach when determining whether *Rooker-Feldman* bars a plaintiff's claims from review in a federal district court." *Efron*, 110 F.4th at 1236. Thus, the court will address Barber's three § 1983 claims in turn.

- **Count 2 (Constitutional Due Process Violations)**

In Count 2, Barber asserts that the state court proceedings violated her constitutional right to due process. According to Barber, her Fourteenth Amendment due process rights were violated during the state court proceedings when (a) two of Barber's witnesses were prevented from testifying; (b) the trial judge was biased against her; (c) she was forced to proceed with trial while ill; (d) her writing implements were confiscated to prevent note-taking; and (e) she wasn't allowed to have the witnesses' testimony read back to her. (Doc. 4, pp. 20–22). Barber also says that Mitchell and Robinson conspired to conceal exculpatory information from her that would have defeated the slander of title claim. (*Id.*, pp. 22–23).

These allegations are similar to the due process violations Barber alleged in *Barber v. Robinson*, Case No. 4:23-cv-1621. As in that case, the court finds that Barber lacks standing to sue Robinson and Mitchell for actions that Judge Crayton took. *See* U.S. Const.. art. III § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (To have standing, the plaintiff's alleged injury must be "fairly traceable to the challenged action of the defendant and not the result of some independent action of some third party not before the court." (cleaned up)). So Barber cannot sue Mitchell and Robinson for Judge Crayton's alleged bias and decisions to proceed without the testimony of two witnesses, require Barber to proceed with trial while ill, confiscate Barber's writing implements, and prevent Barber from having witness testimony being read back to her.

Barber does, however, have standing to sue Mitchell and Robinson for their alleged conspiracy to conceal the name and contact information of a witness who Barber says would have established that her lien didn't cause the sale of Mitchell's campground to fall through. And though the court finds that *Rooker-Feldman* bars the court from granting Barber's request to nullify or

enjoin the state court judgment, it does not prevent the court from deciding whether Barber can recover monetary damages for this alleged due process violation. *See Behr v. Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021). Thus, the court has jurisdiction over this aspect of Barber's due process claim.

- ### Count 3 (Civil Rights Violation Under Section 1983)

In Count 3, Barber contends that Mitchell, Robinson, and other employees of the Robinson Law Firm violated Barber's rights under § 1983 by conspiring with unknown state court employees to alter the state court electronic filing system, manipulate the court reporter's transcript, remove evidence from the courtroom, conceal a witness's contact information, and direct a witness to a fraudulent virtual testimony platform to prevent the witness' testimony. (*See* Doc. 4, pp. 23–28). Barber has standing to bring these allegations against Defendants, and this claim "falls outside *Rooker-Feldman* because it seeks relief for violations that happened during the state processes, not rejection of the state court judgment." *See Behr*, 8 F.4th at 1213. As a result, the court has jurisdiction to consider the merits of Barber's claim that Defendants violated her civil rights by conspiring with state court employees to manipulate the state court record.

- ### Count 7 (Constitutional Violations Related to Appeal)

Barber titles Count 7 as "Constitutional Violations Related to Proper Review on Appeal." (Doc. 4, p. 30). And Barber alleges that "[t]he procurement of the rulings through fraud, misrepresentation, and potential corruption violated [her] right to due process under the Fifth and Fourteenth Amendments to the United States Constitution." (*Id.*, p. 31). Barber then says that this count challenges the Alabama Supreme Court's "[r]estriction requiring a second attorney's signature for future filings" as "an unconstitutional restriction on [Barber's] right of access to the courts," which Barber says "result[ed] from Robinson filing false claims and claim for reimbursement for case[s] he had no involvement" with. (*Id.*). She also says Defendants' "intentional interference with witness testimony violated [Barber's] right to a fair hearing and withholding of witness contact information." (*Id.*). So Barber seeks "relief from the judgment and damages pursuant to 42 U.S.C. § 1983" for these alleged constitutional violations. (*Id.*).

As explained, the court has jurisdiction over Barber's allegation that she is entitled to monetary damages for Defendants' interference with witness testimony and withholding of witness contact information. But the court lacks jurisdiction over Barber's claim that the state court filing injunction violates her right to access to the courts because the Alabama Supreme Court's entry of the filing injunction was the "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. And *Rooker-Feldman* bars the court from granting Barber's request for relief from the state court judgment or from finding that Defendants procured the filing injunction through "fraud, misrepresentation, and potential corruption." *See Efron*, 110 F.4th at 1237. So the court will dismiss these allegations for lack of jurisdiction.

—

To sum up, the court has jurisdiction to hear Barber's § 1983 claims that (a) Mitchell and Robinson owe her money damages because they conspired to hide a witness who would have disproved Mitchell's slander of title claim and (b) Mitchell, Robinson, and members of the Robinson law firm owe her damages for conspiring with state court officials in various manners that affected her lawsuit against Mitchell. So the court must now decide whether § 1983 can provide Barber relief on those claims.

**2. *Merits***: Section 1983 only provides a remedy for acts performed by persons "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." In other words, the Defendant must be a state actor who acted in accordance with state or local law. But Mitchell, Robinson, and the Robinson Law Firm are all private actors. So they can be sued under § 1983 only if this case presents one of those "rare circumstances" in which "a private party can be viewed as a 'state actor' for section 1983 purposes." *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Those "rare circumstances" exist if a plaintiff can show that the defendants' actions satisfy the state compulsion test, the public function test, or the nexus/joint action test. *See id.*

Barber alleges that Mitchell and Robinson's actions constitute state action because they "a. [w]ere performed in conjunction with and with the knowing participation of state court officials;" and "b. [c]ould only have been

11

accomplished through the abuse of state judicial power and authority." (Doc. 4, p. 26). Thus, the relevant test for determining whether Mitchell and Robinson were engaged in state action is the nexus/joint action test, which asks whether "the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in [their] enterprise." *Charles v. Johnson*, 18 F.4th 646, 694 (11th Cir. 2021). This test can be met by showing a conspiracy between a private party and state actors, state-prompted partnership with a private actor, or a private party's individual-prompted use of state authority. *See id.* at 696–97.

Barber asserts that Mitchell and Robinson conspired with multiple state actors to violate her constitutional rights. For example, in each of her three § 1983 counts, Barber contends that Mitchell, Robinson, and Judge Crayton conspired to interfere with her right to call Evan Morris as a witness because: (a) Mitchell falsely testified that he couldn't remember Morris's name; (b) Robinson withheld Morris's contact information from Barber for two years; and (c) Judge Crayton refused to continue the trial even though Barber had only recently located Morris. Barber also says that Mitchell and Robinson coordinated "with unknown court personnel . . . to alter court records, manipulate electronic filing systems, and suppress evidence." (Doc. 4, pp. 23–25). And Barber contends that Michell and Robinson conspired "with court personnel to direct witnesses to fraudulent virtual testimony platforms designed to prevent participation in state court proceedings." (*Id.*, p. 24).

To adequately allege conspiracy under the joint action test, a "plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *Harvey*, 949 F.2d at 1133. And Barber's "complaint consists of purely conclusory allegations that do not plead conspiracy sufficiently to transform [Robinson, Mitchell, or the Robinson Law Firm] into state actors." *See id.*; *see also Davis v. Self*, 547 F. App'x 927, 934 (11th Cir. 2013) (affirming dismissal of § 1983 claims against private parties when allegations of conspiracy amounted "to little more than conjecture and speculation"). Because Barber's complaint does nothing more than speculate that Mitchell and Robinson must have coordinated their actions with state court officials, the court finds that Barber hasn't adequately alleged a conspiracy between Defendants and state actors to deprive Barber of her constitutional rights. *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Nor has Barber shown that Mitchell and Robinson's use of the state court process transformed them into state actors. That Mitchell and Robinson "engaged in the state-court process and obtained court orders is insufficient to make them state actors." *See Yeh Ho v. Sabocik*, 775 F. App'x 551, 554 (11th Cir. 2019). And Robinson's role as "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981). Plus, though Barber argues otherwise, Robinson is not a state actor merely because he used state authorized subpoena power to subpoena Barber's private cell phone records. *See Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983). Mitchell and Robinson engaged in the state-court process and obtained state court orders because (a) Barber sued Mitchell and (b) Mitchell hired Robinson to represent him. Being haled into state court alone cannot transform private actors into state actors, otherwise § 1983 could subject every person who successfully defended a lawsuit in state court to a *second* round of litigation initiated by the same (non-prevailing) party.

In short, having reviewed the allegations in Barber's second amended complaint, the court finds that none of her allegations establish that Mitchell, Robinson, or the Robinson Law Firm acted under color of law. So Barber's remaining § 1983 claims are subject to dismissal for failure to adequately plead state action.[4]

### C.   Motion to Stay

Rather than grant Defendants' motions to dismiss and close this case, Barber says that the court should stay federal court proceedings on her § 1983 claims pending resolution of a state court case Barber filed after Defendants' motions to dismiss were fully briefed. (*See* Doc. 31). According to Barber, a stay is warranted to conserve judicial resources, to allow a state court investigation into the state court filing system's metadata (which Barber says she needs to

---

[4] If the court does in fact have jurisdiction over any of the § 1983 claims that the court has found it lacks jurisdiction to consider, the court alternatively finds that these claims are also subject to dismissal for failure to show state action by Mitchell, Robinson, or the Robinson Law Firm.

13

prove a § 1983 conspiracy), to prevent a premature federal court ruling from having a preclusive effect on the state court proceedings, and to allow the state courts to determine whether the underlying state court judgment is valid.

Barber seeks a stay under the *Burford* and *Colorado River* abstention doctrines. (*See id.*, pp. 4–6). But *Burford* abstention doesn't apply to the facts here because *Burford* requires "the existence of an ongoing ***state administrative proceeding***." *See Deal v. Tugalo Gas Co., Inc.*, 991 F.3d 1313, 1326–27 (11th Cir. 2021) (emphasis added). And while the *Colorado River* abstention doctrine allows the court to stay a federal action pending the outcome of parallel state court litigation, abstention is warranted in only exceptional circumstances. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976). In determining whether *Colorado River* abstention is appropriate, the court must consider these six factors:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*See Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013).

Neither this court nor the state court has assumed jurisdiction over any property, so the first factor doesn't weigh in favor of abstention. *See id.* (rejecting argument that state court judgment was property that favored federal court abstention under first factor). And the federal forum, which neighbors St. Clair County where the state forum is located, is just as convenient to the parties as the state court forum. Thus, factor #2 "cuts against abstention." *See id.* The court finds that the third factor, which looks to the progress of the parallel proceedings, weighs heavily against abstention. Barber filed this federal lawsuit in April 2025, and Defendants' motions to dismiss Barber's second amended complaint are ready for disposition. Only after Defendants' motions were fully briefed and this court had denied Barber's multiple requests for emergency relief in this case and others did Barber file

her new state court action on September 26, 2025. And while the Alabama Supreme Court has appointed the Honorable J. Michael Joiner to preside over Barber's state court case, he has yet to enter any orders in that case.

As for the fourth factor, "[a]lthough the dual proceedings in this instance will likely result in some unremarkable repetition of efforts and possibly some piece-by-piece decision-making, there is no indication that piecemeal litigation poses any greater waste or danger here than it does in the vast majority [of] federal cases with concurrent state counterparts." *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1333 (11th Cir. 2004). And to the extent that this factor favors abstention, the court finds that it should only give this factor slight weight since Barber is the one who chose to litigate her claims in both federal and state court.

The fifth factor weighs heavily against abstention because Barber concedes that this court only has jurisdiction over her § 1983 claims, meaning that federal rather than state law provides the rule of decision. Finally, both the state and federal forum can adequately protect the parties' rights, so the sixth factor is neutral. *See Jackson-Platts*, 727 F.3d at 1143.

In sum, having considered Barber's motion to stay and the relevant factors, the court sees no reason to stay resolution of Barber's § 1983 claims while her newly filed state court case is pending. The court will thus **DENY** Barber's motion to stay (doc. 31).

### D. Third amended complaint

Having found that Defendants' motions to dismiss are due to be granted and Barber's motion to stay is due to be denied, the court must now decide whether it should give Barber leave to amend her complaint a third time to fix the pleading deficiencies that the court has identified. Under Rule 15(a)(2), this court is to grant leave to amend "when justice so requires." But the court may deny leave to amend upon a finding of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

The court finds that justice does not require allowing Barber to file a third amended complaint. Barber has twice amended her original complaint and still fails to plausibly allege a federal law claim against Mitchell, Robinson, or the Robinson Law Firm. Plus, this is not the first case in which Barber has had claims against Mitchell and Robinson dismissed for lack of standing, being barred by the *Rooker-Feldman* doctrine, or failing to adequately allege state action. *See Barber v. Mitchell*, Case No. 4:23-cv-484 (doc. 25); *Barber v. Robinson*, 4:23-cv-1621 (doc. 30). None of Barber's filings in this or any of Barber's other cases suggest that allowing more amendments will cure Barber's pleading deficiencies. So the court will not grant Barber leave to file a third amended complaint.

## III. Remaining Motions (Docs. 10, 13, 18, 23, 26)

### A. Defendants' motion for filing injunction

Along with their motion to dismiss, Robinson and the Robinson Law Firm ask the court to issue a filing injunction similar in scope to the injunction issued by the Alabama Supreme Court and to require Barber to pay Robinson's attorney's fees for defending against this action. (*See* Doc. 6, pp. 18–23). The court **DENIES** this request.

"[F]ederal courts have considerable discretion to restrict filings of litigants who continuously bring frivolous suits that abuse the judicial process." *See Johnson v. 27 Ave. Caraf, Inc.*, 9 F.4th 1300, 1318 (11th Cir. 2021). But the court finds that a pre-filing injunction isn't warranted here. While Barber has filed 10 federal lawsuits related to her state court case against Mitchell, the cases in which pre-filing injunctions have been issued typically involve much more prolific filers. *See, e.g., id.* (affirming pre-filing injunction when plaintiff was "a serial ADA case filer" who had filed 26 gas pump complaints and 131 ADA complaints in the Southern District of Florida within five years); *O'Neal v. Allstate Indem. Ins. Co.*, 2021 WL 4852222, at *5 (11th Cir. Oct. 19, 2021) (affirming pre-filing injunction based on district court's finding that only two of the dozens of cases the plaintiff had filed in "numerous forums over many years" had merit). And Mitchell and Robinson have only been named as defendants in 3 of these cases. Plus, the court cannot

say that the claims Barber brings in this case are so frivolous as to warrant monetary sanctions.

That said, the court puts Barber on notice that the continued filing of claims against Robinson and Mitchell for actions taken during the state court litigation will likely result in the court granting future motions for pre-filing injunctions and monetary sanctions. If Barber continues to rehash arguments related to the Mitchell litigation that this court has summarily rejected, a pre-filing injunction will almost certainly be a necessary and reasonable response to Barber's abuse of the court system. So the court's denial of the motion for sanctions and pre-filing injunction is without prejudice to Mitchell and Robinson's right to seek these sanctions in a future federal court case in which Barber sues them for conduct that the court has found isn't actionable.

### B.  Barber's motion to convert

The court also **DENIES** Barber's motion to convert Defendants' motions to dismiss into motions for summary judgment (doc. 10). This court may take judicial notice of the records in the underlying state court case without converting Defendants' motions into motions for summary judgment. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). And contrary to Barber's assertion, she is not entitled to expert discovery and a digital forensic analysis of the Alabama state court electronic filing system before the court rules on Defendants' motions to dismiss. *See Chudasama v. Mazada Motors Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should, however, be resolved before discovery begins." (footnote omitted)).

### C.  Miscellaneous motions

Finally, the court **DENIES AS MOOT** the parties' remaining motions (docs. 13, 18, 23, 26). Barber's emergency motion to show court action on void judgment (doc. 26) was filed in the wrong court. And consideration of the facts that Barber asks the court to take judicial notice of does not affect the court's ruling on Defendants' motions to dismiss or Barber's motion to stay. So the court **DENIES AS MOOT** Barber's motions for judicial notice (docs. 13, 18)

and Defendants' motion that the court strike Barber's request for judicial notice (doc. 23).

## CONCLUSION

For these reasons, the court **DENIES** Barber's motion for recusal (doc. 27) and motion to stay (doc. 31). The court **GRANTS** Defendants' motions to dismiss (docs. 6, 8). All other motions and requests for relief are **DENIED** (docs. 10, 13, 18, 23, 26).

The court will enter a separate final order that carries out this ruling and closes this case.

**Done** and **Ordered** on November 4, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE